**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 21 CV 50101 |
| v. | ) | |
| | ) | Judge Philip G. Reinhard |
| Maurice D. Neal, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

The court appoints the Federal Defender to represent defendant in this matter. The Federal Defender and the government should meet and confer about the issues described below and should then submit a joint status report to the court by August 19, 2022.

**STATEMENT-OPINION**

Defendant Maurice Neal pled guilty to heroin charges on June 25, 2019.[1] Both he and his counsel, Glenn J. Jazwiec, signed the plea agreement. On September 27, 2019, the court sentenced defendant to 151 months in prison and 3 years supervised release. At this hearing, the court advised defendant that, if he wanted to appeal, he had 14 days to file a notice of appeal. This court told defendant that either he could file the notice of appeal himself, or he could ask his attorney to file it for him, or he could ask the clerk of court to file it for him. [12-1 at 22-23.] It is undisputed that no notice of appeal was filed within this 14-day period.

On November 12, 2019, defendant filed a *pro se* motion for extension of time to file a notice of appeal [119]. The first sentence of the motion states: "*I wish to file a direct appeal* but was unable to do so because when I decided I had been placed in federal transit." *Id.* at 1 (emphasis added). Defendant explained that, during the 14-day period, he was moved to the Ogle County Jail and then later to MCC Chicago and was not able to consult with his attorney. He asked for a 30-day extension to file his notice of appeal, relying on Federal Rule of Appellate Procedure 4 as authority for the request. In this motion, defendant did not give any indication, one way or another, as to whether he was planning to file the notice himself or was going to rely on counsel. The motion gives the impression that defendant was proceeding on his own at this point. However, during this time and continuing until today, Mr. Jazwiec has continued to be listed on the docket as counsel of record for defendant in case number 16 CR 50047-2, and Mr. Jazwiec presumably has received a copy of all of defendant's *pro se* filings in that case, including the November 12, 2019 *pro se* motion in which defendant indicated, quite clearly, that he wanted to take a direct appeal.

---

[1] This was case number 16 CR 50047-2.

Shortly after the *pro se* motion was filed, this court granted the motion and gave defendant until December 16, 2019 to file a notice of appeal. The court noted in this order that the docket indicated defendant was still represented by Mr. Jazwiec. The court instructed defendant to make any future filings through counsel. (In his briefs in this case, defendant has suggested that this latter statement by the court made him reluctant to contact the court directly to inquire about the status of his appeal.)

The docket does not reflect that any notice of appeal was filed during this time.

Fast forward 15 months. On February 18, 2021, defendant filed a *pro se* letter asking for a status report on his appeal [142]. Defendant stated that he "filed his official notice of appeal [on] 11/20/2019." *Id.* He then added that he never subsequently heard from the court or his appointed counsel about the progress of his appeal. Defendant stated that he was attaching a copy of this court's November 14, 2019 order granting the extension of time to file a notice of appeal, as well as a copy of notice of appeal that was supposedly filed back on November 20, 2019. The former document (the court's order) was not actually attached to the letter. As for the latter document (the notice of appeal), defendant attached a typewritten one-page *pro se* letter stating that it was meant to be defendant's notice of appeal in case number 16 CR 50047-2. The date typed at the top of the page was "November 20, 2019." However, the document did not bear any court file stamp indicating that it was filed on or around this date. And again, the docket does not indicate that it was filed. So, if this document were mailed to the court in November 2019 by defendant himself, as he seems to be claiming here, then it presumably got lost in the mail. But the court did file this notice of appeal on February 18, 2021 [143], the same day the court first received it.

The next day, the Seventh Circuit asked the parties to brief the timeliness of the appeal. Defendant filed an opening memorandum stating that he believed that his counsel had filed a timely notice of appeal in November 2019 and that it came as a surprise to him to later learn in 2021 that his counsel never filed that notice. [CTA7 Dkt. 3.] Defendant further stated that, if he had known counsel was not going to file the notice, then he would have done it himself. The government filed a response brief, stating (among other things) that defendant had made contradictory claims by stating, on the one hand, that *he* filed the notice of appeal himself in November 2021 six days after he filed his motion for extension of time and by stating, on the other hand, that he had relied on his counsel to file that notice. [CTA7 Dkt. 10 at 7.] The government also complained that defendant had not provide any evidence, such as a copy of a postmarked envelope, to substantiate his claim that he filed the notice of appeal in November 2019. *Id.* Defendant then filed a reply in which he stated (among other things) the following: "Upon being sentenced and transferred to his current facility, appellant lost contact with his counsel[.]" [CTA7 Dkt. 12 at 1.] This statement seems to indicate that defendant and counsel were not in contact at all during this period which, if true, raises a question of whether defendant did in fact ask counsel to file the notice of appeal. In any event, the Seventh Circuit dismissed the appeal as untimely on March 24, 2021 in a short two-paragraph order.

Meanwhile, several weeks earlier, on March 4, 2021, defendant filed the present § 2255 motion with this court (case number 21 CV 50101). He raised one argument, which was that his

2

counsel had been ineffective because he failed to investigate defendant's prior convictions that were used to enhance his sentence as a career offender. At the time this motion was filed, defendant's appeal in the Seventh Circuit was still pending. In response to a question on the form asking about the timeliness of the § 2255 motion, defendant stated that "no notice was given pertaining to my direct appeal whether it was denied or not so I don't know when the clock started as to my 2255 timeliness." *Id.* at 12. Defendant asked that he be resentenced without career offender status. *Id.* at 13.

This court set a briefing schedule on the § 2255 motion. After requesting and receiving two extensions of time, the government filed an initial response brief [12] raising two arguments. First, the government argued that the ineffective assistance claim failed on the merits because there was no prejudice. Specifically, even if counsel had failed to investigate the prior convictions, defendant still would have been categorized as a career offender under USSG § 4B1.1. *Id.* at 7-8. Second, the government argued that the motion was untimely under the one-year § 2255 statute of limitations.

After being granted an extension of time, defendant then filed his reply brief [15] responding to these arguments in various ways. In addition, he added additional ineffective assistance of counsel allegations, including a claim that counsel failed to review relevant discovery materials about the drug quantities being alleged. Also, defendant stated that, after he filed his § 2255 motion, the Seventh Circuit had held that his direct appeal was untimely. As a result, defendant stated that he was now alleging that counsel was ineffective because he failed to file a timely notice of appeal after being directed to do so. Defendant noted that the government had not filed any affidavit from counsel rebutting defendant's assertions. At the end of this brief, defendant asked that counsel be appointed to assist him.

After reviewing these initial briefs and conducting a preliminary analysis and researching the case law, the court ordered the parties to submit supplemental briefs addressing specifically the allegation that counsel was ineffective for not filing a timely notice of appeal. [16.] The court raised the possibility that the notice-of-appeal issue might be resolved first, separately, with the result being that the rest of the claims would be dismissed without prejudice and the judgment re-entered in case number 16 CR 50047-2, thus allowing defendant to file a timely notice of appeal. The court cited to several district court decisions following this approach.

Thereafter, the government requested three extensions of time, all of which were granted. The government eventually filed a supplemental response brief [23]. In this second response brief, the government switched the order of its two arguments. It began with the statute of limitations issue. According to the government, the one-year period under § 2255(f) began to run on December 17, 2019, when the judgment of conviction became final. Because defendant's § 2255 motion was not filed until March 4, 2021, the motion was untimely by several months. The government went on to argue that equitable tolling should not apply because defendant could not meet the two requirements of that doctrine—namely, "(1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). As for the diligence

3

requirement, the government argued that, even if defendant was justified initially in believing his attorney had filed the notice of appeal, defendant had some obligation during the remaining portion of the one-year period to make "periodic inquiries" with either his lawyer or the court about the status of his appeal. [23 at 4.] The government noted that defendant had not submitted any letters or other evidence indicating that he had been periodically checking on the progress of his appeal. The government's argument that defendant had a duty to make "periodic inquiries" was based on the approach taken in a 2014 District of Alaska decision—*United States v. Young*, 2014 WL 4748567, *2 (D. Alaska 2014). The government, however, did not cite to any Seventh Circuit cases supporting its diligence argument. As for the second requirement of extraordinary circumstances, the government argued that a "garden variety claim" of attorney negligence was not enough to meet this requirement, based on the Supreme Court's decision in *Holland*. The government argued that a failure to file a notice of appeal was merely garden variety negligence. [23 at 7.]

The government's second argument in this second response brief went to the merits. The government again argued that, even assuming counsel was ineffective in various ways, defendant could not prevail because there was no prejudice. As a result, there was no need for an evidentiary hearing regarding any of these allegations. However, as for the notice-of-appeal allegation, the government agreed that a hearing was needed. *Id.* at 10 ("whether defendant did in fact ask defense counsel to file a direct appeal is a factual and potentially disputed matter"). Although the government did not articulate what evidence it anticipated would be presented at such a hearing, the government is presumably anticipating that evidence would be submitted, in some form, from Mr. Jazwiec. The government agreed that if defendant were to prevail at such a hearing by convincing this court that he did ask counsel to file a notice of appeal, then the remedy would be to vacate the criminal judgment and to re-enter an identical judgment and then direct the clerk to file a notice of appeal on defendant's behalf. *Id.* This would then "reset the § 2255 motion filing period" so that defendant could raise his remaining § 2255 claims later in a new § 2255 motion filed after the completion of his direct appeal. Those claims would be dismissed now without prejudice. *Id.*

Defendant then sought, and was granted, his own extension of time for the filing a second reply brief. In his subsequently-filed reply brief, defendant argued (among other things) that equitable tolling should apply because these events took place during the onset of the COVID-19 pandemic that affected the prisons and federal courthouses. [26 at 2.] He also stated that he was "unfamiliar with law, procedures and so forth." *Id.* He again complained that the government had not submitted any evidence, such as an affidavit from defendant's counsel, disputing his contention that he asked counsel to file a notice of appeal.

After reviewing the extensive briefing and conducting additional research, the court is faced with an array of options. The first question is the statute of limitations. This question is governed by § 2255(f), which states:

> **(f)** A 1-year period of limitation shall apply to a [§ 2255] motion[.] The limitation period shall run from the latest of—

4

> **(1)** the date on which the judgment of conviction becomes final;
>
> **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

As summarized above, the government relies on subsection (f)(1) and argues that the limitations period began when the conviction became final (*i.e.* December 17, 2019). If this section were applied, then it is clear that the motion was untimely and the next question would be whether equitable tolling is warranted. The latter issue would require the court to consider (among other questions) whether to follow the "periodic inquiries" framework used by the *Young* court (which was relying mostly on Ninth Circuit law). If the court adopted that approach, the court would also have to assess whether an evidentiary hearing is needed on factual questions relating to what steps defendant may have taken to check on the status of his appeal throughout the one-year limitations period. The government believes a hearing would be unnecessary because defendant has not even alleged that he ever tried to contact his attorney during the period.

      In reviewing these arguments, the court's own research led it to a Seventh Circuit case that neither side cited, but which court finds to be relevant because it involves similar facts and arguments. This is *Ryan v. United States*, 657 F.3d 604, 607-08 (7th Cir. 2011). In *Ryan*, the defendant (Ryan) filed a § 2255 motion alleging that his attorney did not file a timely notice of appeal. A question arose as to whether the § 2255 motion itself was timely filed. Ryan, who was represented by counsel, conceded that his motion was untimely if subsection (f)(1) applied, but argued that he could still prevail under the doctrine of equitable tolling. However, this was not his main argument. Instead, he sought to rely on subsections (f)(2) and (f)(4) by arguing that these two subsections delayed the *start* of the one-year limitations period. Subsection (f)(2), in particular, states that the period can begin to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Ryan argued that it would be reasonable to assume that, for at least several months, he had no duty to make any inquiries about the status of his appeal. The Seventh Circuit found this argument persuasive, explaining as follows:

> Turning to the question of timeliness, Ryan contends that under 28 U.S.C. § 2255(f)(4) or (f)(2), the limitations period for filing his § 2255 motion did not start running until at least May 26, 2009, two months after his conviction became final and one year before he signed the motion. When a limitations period starts and

> whether it is later equitably tolled are two different questions, and if Ryan is right about the starting date, then it does not matter whether he was diligent in the months following that date. [citation omitted] In other words, once the limitations period starts running under subsection (f)(4) or (f)(2), the movant gets the benefit of a full year even if he delays filing until the last minute of it.
>
> \* \* \*
>
> The weight of this authority suggests that a reasonable prisoner may take at least two months—the time Ryan needs—to suspect that counsel has dropped the ball, contact counsel or the court, wait for a response, and verify the suspicion.

*Id.* at 607-08. The district court in *Ryan* had ruled for the government without holding an evidentiary hearing. The Seventh Circuit remanded so that the defendant could have an opportunity to present evidence. The Seventh Circuit noted that a full evidentiary hearing might not be required on remand:

> Finally, we recognize that further factual development need not involve the full panoply of discovery techniques or even a hearing. The district court could, for example, instruct Ryan to supply missing details in a supplemental affidavit or permit the government to submit an affidavit from counsel. Depending on what Ryan and/or his attorneys say, this approach might obviate the need for oral testimony or further discovery.

*Id.* at 608 (citations omitted).

In this court's view, the *Ryan* case raises a question as to whether defendant could rely on subsection (f)(2) or (f)(4) to argue that the statute of limitations did not begin to run until several months after December 17, 2019. If so, this would mean that defendant's § 2255 motion was arguably filed within a year, give or take a few weeks. But this argument assumes that defendant did, in fact, request his counsel to file a notice of appeal and that he was otherwise unaware that the notice had not been filed.

At this point, the court finds that further steps are needed to resolve the factual question of whether defendant told his counsel to file a notice of appeal. This question is relevant to the statute of limitations argument and whether defendant could potentially rely on subsection (f)(2) or (f)(4). It also is relevant to the merits and whether counsel was ineffective in not filing the notice of appeal. (Defendant has also alleged that counsel was ineffective in other ways too.) Both sides agree that an attorney's failure to file a notice of appeal when asked to do so by his client constitutes ineffective assistance of counsel. *See Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000) ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."). This conclusion follows "regardless of whether an appeal was likely to succeed." *Ryan*, 657 F.3d at 606. At this point, it is not clear what arguments defendant would be raising in a direct appeal.

      Thus, the most pressing task is to resolve this factual question. The current record is limited, and contains some arguably contradictory information about defendant's position, as the government has previously pointed out. The court appoints the Federal Defender to represent defendant in this matter. After the Federal Defender has time to review the case and confer with defendant, the Federal Defender should meet and confer with the government about how to best resolve this question and any other questions counsel believes are pertinent at this point. As the Seventh Circuit observed in *Ryan*, it may be possible to resolve these issues without an evidentiary hearing by, for example, submitting affidavits. After conferring, the parties should submit a joint status report on how they propose that this case should proceed, including whether discovery is needed, whether an evidentiary hearing is needed, or whether there is some other way to resolve this initial question of whether counsel was instructed to file a notice of appeal. The court will give the parties until August 19, 2022 to submit the joint status report. If more time is needed, the parties can request additional time.

Date: 7/14/2022                                ENTER:

                                                         _____
                                                           United States District Court Judge

                                                                      Notices mailed by Judicial Staff. (LC)